**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                          No. CR 10-1660 JB

SENAIDA DEAGUERO,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed January 21, 2011 (Doc. 77)("Sentencing Memorandum"). The Court held a sentencing hearing on January 28, 2011. The primary issue is whether the Court should impose a sentence of probation or home detention. Because the Court believes some imprisonment is needed to avoid unwarranted disparities between similarly situated defendants, the Court will impose a sentence of 3 months incarceration and 3 months home confinement.

**PROCEDURAL BACKGROUND**

On June 8, 2010, a Grand Jury charged Defendant Senaida Deaguero with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) -- distribution of heroin -- and 18 U.S.C. § 2 -- aiding and abetting. See Indictment at 1-2, filed June 8, 2010 (Doc. 2). On October 26, 2010, Deaguero pled guilty to a violation of 21 U.S.C. § 841(a)(2) and (b)(1)(C) and 18 U.S.C. § 2. See Plea Agreement, filed October 26, 2010 (Doc. 58). In the plea agreement, the parties stipulated that Deaguero was accountable for at least 10 grams but less than 20 grams of heroin, that Deaguero was a minimal participant, and that therefore, pursuant to U.S.S.G. § 3B1.2(a), she is entitled to a 4-level reduction. See Plea Agreement at 4. The United States Probation Office ("USPO") disclosed a Presentence

Investigation Report ("PSR") on January 7, 2011. The PSR calculated Deaguero's offense level as 10 and her criminal history category as II. A offense level of 10 and criminal history category of II establishes a guideline range of 8 to 14 months.

In her Sentencing Memorandum, Deaguero requests a sentence of probation or home detention. Deaguero argues that a custodial term is not necessary to deter her and others who are similarly situated, and that there is nothing to suggest a need to protect the public because of her meaningful strides towards rehabilitation.

On January 24, 2011, Plaintiff United States of America filed its Response to Defendant Senaida Deaguero's Sentencing Memorandum. See Doc. 78. The United States recommends that the Court sentence Deaguero at the low-end of the applicable guideline sentencing range, arguing that such a sentence would constitute a reasonable sentence.

At the hearing, Deaguero raised a factual objection to the paragraphs 15 and 17 in the PSR. Paragraph 15 of the PSR states: "**Deaguero** stated she had been with Martinez on approximately 60 to 70 occasions to sell heroin to various people." PSR ¶ 15, at 6. Paragraph 17 of the PSR states: "During **Deaguero's** post arrest statement she admitted to selling heroin with Martinez on at least 60 to 70 other occasions." PSR ¶ 17, at 6. Deaguero asserts that, during her interview with DEA agents, which was a source of information for the PSR, she stated that she had been with Martinez on approximately six to seven occasions to sell heroin to various people. The Court will change the sentences in paragraphs 15 and 17 to state: "The post-arrest report states that Deaguero had been with Martinez on approximately 60 to 70 occasions to sell heroin to various people; Deaguero states she admitted to selling heroin with Martinez 6 to 7 times." Because paragraph 24 contains a similar sentence stating that Deaguero admitted to selling heroin with Martinez on sixty to seventy occasions, the Court will also change this paragraph to reflect that Deaguero states she admitted to

selling heroin with Martinez six to seven times. Both Deaguero and the United States represented that these changes were acceptable.

Deaguero also objected to paragraphs 30 and 31 of the PSR. Paragraph 30 of the PSR calculated a 2-level reduction in Deaguero's offense level for acceptance of responsibility, and paragraph 31 contained the total offense calculation. See PSR ¶¶ 30-31, at 9. Deaguero stated that, in the plea agreement, the parties stipulated to a 3-level reduction. Deaguero stated that the PSR should have calculated a 3-level reduction, which would have placed her offense level at 9, which, with Deaguero's criminal history category of II, would establish a guideline range of 6 to 12 months.

## LAW REGARDING U.S.S.G. § 1B1.3

U.S.S.G. § 1B1.3 which defines relevant conduct, states:

> Unless otherwise specified (i) the base offense level where the guidelines specified more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:
>
> > (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> >
> > (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

U.S.S.G. § 1B1.3. The application notes to U.S.S.G. § 1B1.3 define "jointly undertaken criminal activity" as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3 application note 2. In evaluating jointly undertaken criminal activity under subsection (1)(B), the guidelines distinguish between the findings the court must make for sentencing purposes and those traditionally relevant

to conspiracy law analysis.  The guidelines recognize that, "[b]ecause a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant . . . is not necessarily the same as the scope of the entire conspiracy."  U.S.S.G. § 1B1.3 application note 2.  Consistent with that recognition, a defendant's relevant conduct does not include conduct in which the co-conspirators engaged before the defendant joined the conspiracy, even if the defendant knew of that conduct.  See U.S.S.G. § 1B1.3 application note 2; United States v. Bad Wound, 203 F.3d 1072, 1077 (8th Cir. 2000)("A person cannot be held liable for the losses caused by other conspirators in the scheme prior to the time the person entered the conspiracy.").  Nevertheless, once a defendant joins the criminal activity, U.S.S.G. § 1B1.3(a)(1)(B) provides that he is accountable for the conduct of others that was both: (i) "in furtherance of the jointly undertaken criminal activity;" and (ii) "reasonably foreseeable in connection with that criminal activity."  U.S.S.G. § 1B1.3 application note 2.  See United States v. Westcott, 214 F. App'x 787, 793 (10th Cir. 2007).  To determine a defendant's accountability "for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)."  U.S.S.G. § 1B1.3 application note 2.

The application notes set forth several examples to help illuminate the guideline provision. In one example,

> Defendants H and I engaged in an ongoing marihuana importation conspiracy in which Defendant J was hired only to help off-load a single shipment.  Defendants H, I, and J are included in a single count charging conspiracy to import marihuana. Defendant J is accountable for the entire single shipment of marihuana he helped import under subsection (a)(1)(A) and any acts and omissions in furtherance of the important of that shipment that were reasonable foreseeable . . . .  He is not accountable for prior or subsequent shipments of marihuana imported by Defendants

> H or I because those acts were not in furtherance of his jointly undertaken criminal activity (the importation of a single shipment of marihuana).

U.S.S.G. § 1B1.3 application note 2(c)(3). In the cases involving controlled substances, "the scope of the jointly undertaken criminal activity . . . may depend upon whether, in the particular circumstances, the nature of the offense is more appropriately viewed as one jointly undertaken criminal activity or as a number of separate criminal activities." U.S.S.G. § 1B1.3 application note 2(c)(8).

In United States v. Westcott, the United States Court of Appeals for the Tenth Circuit found that the district court did not commit clear error in attributing 8.845 kilograms of a mixture containing methamphetamine to the defendant. See 214 F. App'x at 793. The defendant argued that most of the 8.845 kilograms were not "reasonably foreseeable" to him, because, "unlike his co-defendants, he did not live in the trailer where the methamphetamine was manufactured." 214 F. App'x at 793. The defendant argued that he arrived after the most of the methamphetamine was "cook[ed]" and only cleaned the equipment. 214 F. App'x at 793. The defendant conceded, however, that trial testimony showed that he broke down the ingredients for methamphetamine several times. See 214 F. App'x at 793. The Tenth Circuit stated:

> The district court arrived at the 8.845 kilograms by reviewing available testimony and attributing to [the defendant] the amount of methamphetamine manufactured by the conspiracy during the period [the defendant] participated in it. The district court did not commit clear error in attributing these amounts to [the defendant] even if his role was primarily to clean up the equipment after a manufacturing session. Other evidence established knowing participation in manufacturing the methamphetamine, its preparation as well as the related clean up and disposal.

214 F. App'x at 793.

The Court has previously addressed a defendant's relevant conduct under U.S.S.G. § 1B1.3. See United States v. Vigil, 476 F. Supp. 2d 1231, 1287-88 (D.N.M. 2007)(Browning, J.). In United

States v. Vigil, the Court noted that, although the guidelines require a court to consider jointly undertaken criminal activity, regardless whether the defendant has been charged with a conspiracy, it had previously found by a preponderance of evidence that the defendant was a member of a conspiracy. See 476 F. Supp. 2d at 1286. To determine the point at which the defendant became a member of the conspiracy, the Court addressed at what point the defendant "stopped being a passive observer of the conspiracy's activity and began to actively manipulate the criminal activity to his benefit." 476 F. Supp. 2d at 1286. The Court found that the first time the defendant's "active participation in the conspiracy c[ould] be established by a preponderance of the evidence was . . . when he began to accept campaign assistance from his co-conspirators knowing that the funds for this assistance w[ere] derived from kickback proceeds." 476 F. Supp. 2d at 1287. The Court found that, at this point, a preponderance of the evidence indicated that the defendant "had knowledge of the jointly undertaken criminal activity, and agreed to become an active participant in manipulating its proceeds," and thus "attribute[d] [the defendant's] co-conspirators' illicit activity -- engaged in after April 1, 2002 -- to [the defendant] . . . ." 476 F. Supp. 2d at 1288.

## ANALYSIS

The Court will accept the parties' stipulation that at least 10 grams but less than 20 grams are attributable to Deaguero. The PSR states that Deaguero admitted to selling heroin on sixty to seventy occasions with Martinez and on twenty occasions by herself. The PSR recognizes that no further charges were filed against Deaguero, because the amount of heroin she sold could not be determined: "Although no amount could be definitively determined Deaguero's base offense [level] should reflect an increased level[;] [h]owever, both parties agreed the instant offense involved more than 10 grams but less than 20 grams of heroin." PSR ¶ 24, at 8. Regardless whether Deaguero admitted to selling heroin sixty to seventy times or six to seven times, the Indictment charged

Deaguero only with Count II -- a single count of distribution of heroin. She was not charged with Count I of the Indictment, and the United States did not file any further charges against her, because the amount she sold could not be determined.

> U.S.S.G. § 1B1.3, which defines relevant conduct, states:
>
> Unless otherwise specified . . . the base offense level . . . shall be determined on the basis of the following . . . in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. 1B1.3. The application notes to U.S.S.G. § 1B1.3 define "jointly undertaken criminal activity" as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3 application note 2. To determine a defendant's accountability "for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." U.S.S.G. § 1B1.3 application note 2.

To determine Deaguero's accountability, the Court must determine the scope of the conduct and objectives embraced by the jointly undertaken criminal activity. On February 16, 2010, Drug Enforcement ("DEA") Agents debriefed a confidential source ("CS") regarding a heroin purchase from Martinez. PSR ¶ 8, at 4. The CS purchased a net weight of 2.8 grams of heroin from Martinez that day. See id. ¶ 9, at 5. On March 7, 2010, DEA Agents debriefed a CS who arranged to purchase an ounce of heroin from Martinez. See id. ¶ 10, at 5. Martinez arranged to meet the CS, stated that she would arrive with her heroin suppliers, and advised the CS to make contact with a

male in a brown Honda Accord.  See id. ¶ 10, at 5.  The CS later observed the Honda Accord, which Deaguero was driving, enter the parking lot and made contact with the male passenger -- Vigil.  See id. ¶ 10, at 5.  The CS bought heroin from the Vigil, which had a net weight of 17.8 grams.  See id. ¶¶ 10, 12, at 5.

Although the PSR reports that Deaguero admitted to selling heroin with Martinez on sixty to seventy occasions, the preponderance of the evidence does not indicate that the scope of the jointly undertaken criminal activity covered the February 16, 2010 transaction.  Deaguero stated that, because her then-boyfriend, Vigil, was addicted to heroin, and because they were short on money, she began to sell heroin for Martinez in return for heroin for Vigil.  See PSR ¶ 15, at 6.  In the cases involving controlled substances, "the scope of the jointly undertaken criminal activity . . . may depend upon whether, in the particular circumstances, the nature of the offense is more appropriately viewed as one jointly undertaken criminal activity or as a number of separate criminal activities."  U.S.S.G. § 1B1.3 application note 2(c)(8).  In reading the statements that it did, it appears that the United States concluded that each transaction was a separate transaction and that Deaguero would sell heroin in return for heroin for Vigil.  The Court cannot, on the record before it, disagree with that conclusion, and the United States does not, given its stipulation, appear prepared to prove to the Court otherwise.  It thus appears that the scope of the jointly undertaken criminal activity was to sell one ounce of heroin on March 7, 2010.  Activities that Martinez took before the jointly undertaken criminal activity is not attributable to Deaguero.  See U.S.S.G. § 1B1.3 application note 2; United States v. Vigil, 476 F. Supp. 2d at 1287-88 (attributing a defendant's co-conspirators' illicit activity to the defendant after the point in time that a preponderance of the evidence indicated that he had knowledge of the jointly undertaken criminal activity and agreed to become an active participant in the activity).  The transaction on March 7, 2010 involved the sale

of 17.8 grams of heroin. In the plea agreement, the parties stipulated that at least 10 grams but less than 20 grams of heroin are attributable to Deaguero. The Court will accept the parties' stipulation that at least 10 grams but less than 20 grams of heroin are attributable to Deaguero, because Deaguero was charged with a single transaction, and because, in the transaction for which she was charged, she was responsible for 17.8 grams of heroin.

The Court will not accept the parties' non-binding stipulation in the plea agreement that Deaguero was a minimal participant. For the transaction to which Deaguero pled guilty, Martinez made arrangements with a confidential source to meet Deaguero and Vigil to purchase heroin. The Court gave co-Defendant Mark Vigil a minimal participant reduction. The Court accepted Martinez' 11(c)(1)(C) plea agreement and sentenced Martinez to a sentence of 12 months and 1 day, pursuant to the parties' stipulation in the plea agreement. The Court does not believe it should give both Deaguero and Vigil a minimal participant reduction for the same transaction. The guidelines state that a mitigating role adjustment is "not applicable unless more than one participant was involved in the offense." U.S.S.G. § 3B1.2 application note 2. The Court believes that, because it has already given a minimal participant adjustment for this transaction, it would be inconsistent to give the other person involved in the transaction, Deaguero, a minimal participant adjustment as well. To give the guidelines integrity, the Court therefore will not give Deaguero a minimal participant adjustment. The Court will, however, vary to a sentence that is in line with the sentence that Deaguero expected.

The Court has carefully considered the circumstances of the case. The Court will accept the plea agreement in the case, with the exception of the stipulation as to the minimal participant adjustment. The Court has reviewed the PSR and its findings. The Court will accept the factual findings in the PSR, with the changes to paragraphs 15, 17, and 24. The Court has reviewed the sentencing guideline applications in the PSR. The Court accepts these applications, with an

adjustment to paragraph 27, which calculates a 4-level reduction for role adjustment, because the Court has found that no role adjustment is appropriate, and with an adjustment to paragraph 30, which calculates a 2-level reduction for acceptance of responsibility, so that it includes a 3-level reduction for acceptance of responsibility.[1] With these adjustments, Deaguero's total offense level is 13. The Court has also considered the factors set forth in 18 U.S.C. § 3553(a). Deaguero's offense level is 13, and her criminal history category is II, establishing a guideline imprisonment range of 15 to 21 months. The Court notes that Deaguero sold 17.8 net grams of heroin to a confidential source.

The Court has carefully considered the guidelines, but in arriving at its sentence, it has taken into account not only the guidelines but other sentencing goals. Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant. After carefully considering the facts and circumstances of the case, the Court believes that the punishment that is set forth in the advisory guideline range is not appropriate for this sort of offense. The Court has considered the kinds of sentences and ranges that the guidelines establish, and the Court believes that a sentence that varies approximately 4 offense levels is more appropriate than a sentence of 15 to 21 months. With a variance of approximately 4 offense levels, Deaguero's offense level would approximate a sentence with an offense level of 9, which, with her criminal history category of II, would provide a guideline

---

[1] Because the Court finds no role adjustment appropriate, the offense level, before a reduction for acceptance of responsibility, is 16. Because the offense level is 16, Deaguaro is entitled to a 3-level reduction rather than 2, which is available to those with offense levels above 16. See U.S.S.G. § 3E1.1 (stating that, if the defendant demonstrates acceptance of responsibility, decrease the offense level by 2 levels, and that, if the defendant qualifies for a decrease and his or her offense level before the decrease is 16 or greater, and "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct," decrease the defendant's offense level by 1 additional level).

sentencing range of 6 to 12 months.  The Court believes that a sentence in the nature of 6 to 12 months is more appropriate to reflect the seriousness of the offense, promote respect for the law, and to provide a just punishment.  The Court takes into account the problems with the confidential informant in this case, who was using the heroin he was supposed to be buying in an undercover capacity.  The confidential informant also induced Martinez to resume using heroin and threatened her to encourage her to facilitate sales of heroin to him.  The Court believes that this sentence affords adequate deterrence, both on a specific level as to Deaguero and also to the public.  For the past seven months, Deaguero has resided at La Pasada Halfway House.  During this time she has not tested positive for illegal substances or alcohol.  She has been gainfully employed.  The Court believes that a sentence in the guideline range of 6 to 12 months is sufficient to protect the public, and, because of some of the things the Court will impose as far as conditions of supervised release, the Court believes that a sentence in this range effectively provides Deaguero with some needed education, training and care.  The parsimony clause weighs in favor of a 6-months sentence.  While Deaguero wants to be released, the Court has sentenced Martinez to a sentence of 12 months and 1 day, and Vigil to a sentence of 224 days or time served, whichever is less, and Deaguero is more culpable than Vigil.  See PSR ¶ 18, at 7 ("[I]t appears Martinez was more culpable than **Deaguero** and Vigil, Martinez . . . provid[ed] the heroin and directed others in the transactions.  **Deaguero** was delegated to selling heroin for Martinez, and Vigil appears the least culpable.  **Deaguero** was instructed by Martinez and **Deaguero's** gain was the amount provided for Vigil's drug habit.")(bold in original).  She needs to spend some time in imprisonment to avoid unwarranted sentencing disparities among similarly situated defendants.  Under U.S.S.G. § 5C1.1, the Court will split the sentence.  An offense level of 9 and a criminal history category of II establishes a sentence in zone B of the guidelines.  U.S.S.G. § 5C1.1 states that a sentence in zone B may be satisfied by a sentence

-11-

of imprisonment which includes a term of supervised release with a condition that substitutes one day of home detention for one day of imprisonment, provided that at least a month is satisfied by imprisonment.  See U.S.S.G. § 5C1.1(c), (e).  The Court will commit Deaguero to the custody of the Bureau of Prisons for a term of three months.  The Court believes that some incarceration is necessary to fulfill the factors set forth in 18 U.S.C. § 3553(a), but the Court believes that a 3-month incarceration is sufficient.  The Court impose home confinement for the other 3 months.  The Court believes that this sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a).  And while the Court's task as a trial court is not to come up with a reasonable sentence, but to balance the 18 U.S.C. § 3553(a) factors correctly, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).")(citation omitted), the Court believes that this sentence balances the factors in 18 U.S.C. § 3553(a) appropriately and is a reasonable sentence.  The Court concludes that this sentence is sufficient without being greater than necessary to comply with the purposes set forth in the Sentencing Reform Act.

     **IT IS ORDERED** that Defendant Senaida Deaguero's requests for a sentence of probation or home detention in the Defendant's Sentencing Memorandum, filed January 21, 2011 (Doc. 77), are granted in part and denied in part.  The Court will impose a sentence of 3 months incarceration and 3 months home detention.

                                                _____  
                                                UNITED STATES DISTRICT JUDGE

*ounsel:*

Kenneth J. Gonzales
  United States Attorney
Lynn Wei-Yu Wang
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Martin Lopez, III
Martin Lopez, III, P. C.
Albuquerque, New Mexico

    *Attorney for the Defendant*